**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**TYLER TOPEL,**

Plaintiff,

v.

**KAYLA TONG,**

Defendant.

CASE NO. 3:24 CV 1336

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Pending before the Court is a Motion for Partial Summary Judgment filed by Defendant Kayla Tong. (Doc. 23).[1] Plaintiff Tyler Topel opposed (Doc. 25), and Defendant replied (Doc. 26). Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a). For the foregoing reasons, Defendant's Motion is granted in part and denied in part.

## BACKGROUND

This case arises from an alleged partnership between Plaintiff and Defendant to operate an adult content creation business. By way of background, Plaintiff and Defendant first interacted sometime in the back half of 2014 through a website called "FetLife"—an adult social networking platform. *See* Doc. 21-1, at 25–26; Doc. 21-2, at 36–41.[2] As indicated by screenshots of Defendant's FetLife inbox, Defendant operated under the name "honeysuckle" when interacting

1. Defendant's Motion is "partial" in that it seeks summary judgment on the claims raised by Plaintiff in his Complaint, not on those counterclaims Defendant raised in her Anwer. *See* Docs. 7, 23.
2. Unless otherwise specified, all pincites from Docs. 21-1 & 21-2 employ the deposition transcripts' internal pagination rather than ECF's.

with other FetLife users. *See* Doc. 21-1, at 74;[3] Doc. 21-2, at 39. Shortly after Plaintiff and Defendant met online, the pair struck up a romantic relationship and, around June or July of 2015, began performing together in sexually explicit live shows on an adult livestreaming service known as "Chaturbate." *See* Doc. 21-1, at 28; Doc. 21-2, at 46–48. The couple performed live shows and created other explicit video content under the name of "19Honeysuckle" and certain minor variations thereof. *See* Doc. 21-1, at 32–33; Doc. 21-2, at 13–14. Both Plaintiff and Defendant played a role in producing livestreamed and recorded content. Specifically, Plaintiff performed in such content, filmed and edited certain video content of the couple, and managed the 19Honeysuckle brand across various adult and social media accounts. *See* Doc. 21-1, at 57–62, 77–78; Doc. 21-2, at 102–04. In addition to their joint content, Plaintiff began producing solo live and recorded content under the name of "Tom Christian." *See* Doc. 21-1, at 38–39. Similarly, Defendant produced her own solo content, though such content remained under the 19Honeysuckle moniker rather than an independent solo account. *See id.*

Initially, the couple performed these live shows for their own enjoyment rather than with an intent to generate revenue. *See* Doc. 21-2, at 88. As the 19Honeysuckle brand grew on Chaturbate, however, an influx of revenue came in the form of "tips" from viewers of the couple's live shows. *See id.* at 49.[4] Accordingly, Chaturbate would process these tips and mail the couple a check for the amount earned across their live shows during a given period. Plaintiff originally received and cashed these checks before splitting the revenue equally between himself and

---

3. This pincite utilizes ECF's internal pagination.

4. At some unspecified point in time, the couple also started generating significant income from content posted under the 19Honeysuckle brand to other adult platforms such as OnlyFans. *See* Doc. 21-1, at 91.

Defendant. *See* Doc. 21-1, at 119–121; Doc. 21-2, at 67–68, 75–77.[5] For one reason or another, the couple later routed revenue from the 19Honeysuckle Chaturbate account and related ventures to a bank account established and operated by Defendant. *See* Doc. 21-1, at 49–52; Doc. 21-2, at 78–81.[6] Despite controlling the account in her name, Defendant added Plaintiff as an "authorized user" of the account, and the pair used funds deposited in this account to cover living expenses; purchase a condo, two cars, and a jet ski; and pay down credit card bills accrued by Plaintiff. *See* Doc. 21-1, at 14–15, Doc. 21-2, at 23–33, 35–36. A few years into their streaming and content creation careers, Plaintiff and Defendant also used content-based revenue to start an Airbnb rental out of an apartment leased by Defendant. *See* Doc. 21-1, at 55–66; Doc. 21-2, at 187–89. However, Defendant claims this apartment ceased operating as an Airbnb months before the Parties ended their relationship. *See* Doc. 21-2, at 189–90.

But the Parties' lucrative adult entertainment enterprise was not destined to last. In January 2024, the couple engaged in what may fairly be described as a less-than-amicable termination of their romantic relationship. *See* Doc. 21-1, at 63–72; Doc. 21-2, at 19–20. After their split, Defendant locked Plaintiff out of the 19Honeysuckle Chaturbate account, the Gmail business account associated therewith,[7] the couple's banking accounts, and other accounts across additional adult content platforms by altering the relevant login credentials. *See* Doc. 21-2, at 72–73, Doc. 21-1, at 75–78. In response, Plaintiff issued notice by various means to multiple content platforms, Chaturbate included, that they no longer had his consent to host content depicting him. *See* Doc.

---

5. While Defendant does not recall the exact share of these initial payments Plaintiff distributed to her, she puts forth no evidence rebutting Plaintiff's assertion he distributed the funds on a 50/50 basis.
6. The Parties further used a Cashapp account to manage alleged joint funds, including those received from customers purchasing their content. *See* Doc. 21-1, at 138–39.
7. During her deposition, Defendant stated the Gmail account was "used as a business account . . . for '19_Honeysuckle,'" a derivative of the 19Honeysuckle username. *See* Doc. 21-2, at 72–73.

21-1, at 83–85. However, Plaintiff avers Defendant continued to profit from posting content he appeared in and by posting her own content on the 19Honeysuckle account (albeit under a different username) to which she deprived him access after termination of their relationship. *See* Doc. 21-1, at 105–08, 142–45; Doc. 21-2, at 182–86.

Unable to resolve this complex dispute over alleged partnership property, profits, and personal property purchased with such profits, Plaintiff commenced this suit. He pursues the following claims: (1) partition of the condo; (2) accounting as to the condo; (3) breach of contract as to the Airbnb; (4) unjust enrichment as to the Airbnb; (5) accounting as to the Airbnb; (6) copyright infringement; (7) accounting of profits from the copyrighted works; (8) breach of fiduciary duty; (9) injunctive relief as to the copyrighted works; (10) injunctive relief to prevent unauthorized use of the accounts; (11) conversion as to the Cashapp account and disputed vehicles; and (12) unjust enrichment as to the same. *See* Doc. 1, at 10–18. Defendant moves for summary judgment on each claim, and the Court analyzes each claim in turn.

## Standard of Review

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any factual matter in dispute; the Court determines only whether the case contains sufficient evidence from which a fact finder could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## Discussion

While Defendant's Motion proceeds with a sequential analysis of each claim in the order in which they were raised in Plaintiff's Complaint, *see, e.g.*, Doc. 23-1, at 6–9, the Court instead chooses to group claims and corresponding arguments by general subject matter. First, the Court will analyze whether there is sufficient evidence Parties established a business partnership centered around the operation of the 19Honeysuckle brand and, if so, whether Plaintiff has presented sufficient evidence Defendant breached a fiduciary duty stemming from the partnership. As part of this analysis, the Court will also resolve the dispute regarding whether Plaintiff may maintain separate actions for "accounting" related to the partnership's finances and whether Plaintiff may pursue permanent injunctive relief. Plaintiff's copyright claims, including the request for the remedy of accounting for profits, will also be discussed as part of this section. Second, the Court will resolve Defendant's Motion with respect to Plaintiff's claim for partition of the condo. Third, the Court will determine whether Plaintiff has presented evidence sufficient to create an issue of material fact with respect to the breach of contract and unjust enrichment claims pertaining to the Airbnb. Finally, the Court will decide whether sufficient evidence exists for Plaintiff to maintain

his unjust enrichment and conversion claims with respect to the disputed vehicles and the funds deposited in the couple's Cashapp account.

Partnership

Under Ohio law, a partnership is defined as "an association of two or more persons to carry on as co-owners a business for-profit." Ohio Rev. Code § 1776.01(M); *Ladd v. Planchak*, 233 N.E.3d 725, 735 (Ohio Ct. App. 2024). And a "business" around which a partnership may be formed includes "every trade, occupation and profession." Ohio Rev. Code § 1776.01(A). Once two or more persons are deemed partners, they owe fiduciary duties to one another. *See Kademian v. Marger*, 20 N.E.3d 1176, 1198 (Ohio Ct. App. 2014); Ohio Rev. Code § 1776.44(A)–(B) (outlining the contours of the duties of "loyalty" and "care" partners owe to each other and to the partnership itself). If one partner breaches their duties, the other partner may maintain an action for legal or equitable relief against the former. *See* Ohio Rev. Code § 1776.45(B). And, as discussed further below, such equitable relief may include the remedy of an accounting—sometimes referred to as "disgorgement" or an "accounting for profits." *See Roy's Travel Bureau, Inc. v. Inspire Travel Grp.*, 2025 WL 2897219, at *6 (N.D. Ohio) (citing *Moore Fam. Tr. v. Jeffers*, 225 N.E.3d 548, 559 (Ohio Ct. App. 2023)); Samuel L. Bray, A Catalog of Legal and Equitable Remedies 4 nn.22–23 (August 04, 2025), available at https://ssrn.com/abstract=5378666.

There are thus a maximum of three questions this Court must answer: (1) has Plaintiff put forth sufficient evidence he and Defendant formed a partnership to operate the 19Honeysuckle accounts as a business for profit; (2) if so, is there a triable issue regarding whether Defendant breached a fiduciary duty arising from their partnership; and (3) if so, are there grounds for Plaintiff to proceed with a request for the equitable remedy of accounting. The Court answers "yes" to all three questions.

*Partnership Formation*

"Courts consider a number of factors in determining the existence of a partnership, including: the sharing of profits, 'the existence of a written or oral partnership agreement; the joint ownership and control of property; the ability of members to bind the business entity; and the nature of the tax returns filed by the business entity.'" *Reilly v. Meffe*, 6 F. Supp. 3d 760, 770 (S.D. Ohio 2014) (quoting *In re Est. of Ivanchak*, 862 N.E.2d 151, 155 (Ohio Ct. App. 2006)); *see* Ohio Rev. Code § 1776.22(C). "A person who receives a share of the profits of a business is presumed to be a partner in the business" unless such profits served as payments for a debt, services as an independent contractor or employee, rent, certain other employment benefits, or interest on a loan. Ohio Rev. Code § 1776.22(C). It is not a strict prerequisite for the parties to enter into a written partnership agreement or even intend to form a partnership before forming one. *Id.* at § 1776.22(A). However, the putative partners must, if not through words then through actions, "manifest[] the intent to be bound and a meeting of the minds as to the essential terms of the association." *Ivanchak*, 862 N.E.2d at 154. Whether a partnership agreement exists is "generally an issue for the trier of fact to resolve." *Id.*

Here, Plaintiff has put forth evidence sufficient for a reasonable fact finder to conclude a partnership existed between him and Defendant to operate the 19Honeysuckle brand. First, there is sufficient evidence in the record for a reasonable fact finder to determine Plaintiff shared in the profits from operation of 19Honeysuckle and thus presume the presence of a partnership. Plaintiff offered deposition testimony indicating he initially received revenue checks from the 19Honeysuckle Chaturbate account, cashed them, and divided the proceeds between him and Defendant on a 50/50 basis. *See* Doc. 21-1, at 121; Doc. 21-2, at 66–68. Even when such revenue was later directed to a dedicated business bank account controlled by Defendant, *see* Doc. 21-1, at

51–53 (indicating this bank account received only revenue generated from 19Honeysuckle and related accounts), Plaintiff maintains he retained "unrestricted access" to the funds therein. *See id.* at 24–25; Doc. 21-2, at 127–29. And Plaintiff's deposition testimony indicates at least some funds remaining within this account were true profits rather than mere gross revenue, as the couple used money in this account to purchase equipment used to create their content. *See* Doc. 21-1, at 97–98, 107–08; Ohio Rev. Code § 1776.22(C)(2) ("The sharing of gross returns does not by itself establish a partnership."); *Bobb Forest Prods. v. Mobark Indus.*, 783 N.E.2d 560, 580 (Ohio Ct. App. 2002) (explaining businesses expenses are "deducted from gross revenue to arrive at . . . profits").

Defendant argues Plaintiff cannot "identify any specific terms of the alleged partnership nor explain how the parties['] actual conduct squared with a 50/50 partnership." (Doc. 23-1, at 22). But there is sufficient evidence of the "acts and conducts of the parties" from a which a reasonable fact finder may "infer[] that the parties have agreed to become partners" on a 50/50 basis. *Brewster v. Bigham*, 2005 WL 3047491, at *2 (Ohio Ct. App. 2005) (quoting *Rumford Ins. Co. v. Wack*, 1985 WL 7056, at *2 (Ohio Ct. App. 1985)). First, as explained above, Plaintiff testified he initially cashed the couple's Chaturbate revenue checks and divided the proceeds evenly. Second, both Plaintiff and Defendant indicated each had the full ability to access and spend funds from the bank account in which the couple's adult content-based revenue was deposited and, after expenses, where their profits remained. *See* Doc. 21-1, at 24–25; Doc. 21-2, at 127–29. Third, the parties used profits from the 19Honeysuckle content to purchase a condo which they then sold while this case was pending. *See* Doc. 21-1, at 139–140. Defendant now concedes there is "no dispute over the proceeds" of such sale and thus the proceeds should "be split between" Plaintiff and Defendant "equally." Doc. 26, at 6. If Plaintiff were not entitled to half of the profits of 19Honeysuckle

content, it is unclear why he would be entitled to half the value of a condo purchased with such profits despite the condo not being marital property. *See* Docs. 1-1, 1-2. Further, there is no evidence in the record demonstrating such a 50/50 profit split would be unreasonable given each party's respective roles in creating content for the 19Honeysuckle brand. *See, e.g.*, Doc. 21-2, at 92 ("[Plaintiff] would perform in some live streams. He would edit couple's [sic] content, and some promotion on a couple platforms."); *id.* at 205–17 (describing dozens of videos Plaintiff either appeared in, edited, or photographed, including certain of Defendant's solo videos).

The fact finder very well may be convinced by Defendant's characterization of these facts as demonstrating "a romantic couple living off one person's income, not a business partnership." (Doc. 23-1, at 25). Perhaps a reasonable fact finder would find weighty Defendant's treatment of 19Honeysuckle as a sole proprietorship for taxation purposes. *See* Doc. 21-2, at 68; *Ivanchak*, 862 N.E.2d at 155 (listing "the nature of the tax returns" filed by a business as a relevant factor in determining whether a partnership exists); *but see* Doc. 21-1, at 22–23 (claiming the "taxes on the income" from the couple's content was paid out of "the joint account" while being "filed under [Defendant's] taxes"). Or perhaps the fact that Defendant registered and controlled under her name the bank account in which the revenue was deposited ultimately proves dispositive. *Cf.* Doc. 26, at 3–4 (arguing Plaintiff's use of a credit card which was paid by funds in the relevant bank account "does not mean [Plaintiff's] credit card was 'linked' to [Defendant's] account or that he had 'unrestricted access' thereto." (quoting Doc. 21-1, at 24)). The same can be said for Plaintiff's decision to produce solo content under the distinct name of "Tom Christian" while Defendant's solo content remained under the 19Honeysuckle label. While Defendant may ultimately prevail on the partnership question before a fact finder, there is sufficient evidence to support a counter-narrative in which Plaintiff and Defendant jointly operated and co-owned the 19Honeysuckle

brand as a lucrative adult content creation business for profit. *See* Doc. 25, at 7–9. Thus, the Court is precluded from entering judgment in favor of Defendant on the question of whether Plaintiff and Defendant formed a partnership.

*Breach of Fiduciary Duties*

"To support a breach of fiduciary duty claim, a party must show the existence of a fiduciary relationship, failure to comply with a duty accorded that relationship, and damages proximately resulting from that failure." *Keybank Nat'l Assoc. v. Guarnieri & Secrest, P.L.L.*, 2008 WL 5124562, at *6 (Ohio Ct. App. 2008) (citing *Strock v. Pressnell*, 517 N.E.2d 1235, 1246 (Ohio 1988)). Because issues of fact remain regarding the presence of a partnership—a fiduciary duty-creating relationship—between Plaintiff and Defendant, only the scope of such duties, Defendant's breach, and Plaintiff's damages remain at issue.

Defendant offers four arguments directly addressing the issue of whether she is entitled to summary judgment on Plaintiff's breach of fiduciary duty claim. First, assuming a partnership was formed between the couple, Defendant claims the partnership's dissolution following the couple's breakup means she "did not owe any duties to [Defendant]" when the alleged breaches occurred. (Doc. 23-1, at 25). Second, Defendant argues Plaintiff "has not sufficiently identified" any action Defendant took to breach any of the duties owed throughout the course of the partnership. *Id.* at 26. Third, Defendant claims Plaintiff comes to this Court with "unclean hands" and is therefore precluded from invoking this Court's equitable authority. *Id.* Fourth and finally, Defendant claims Plaintiff fails to offer evidence of damages stemming from any purported breach. *Id.* at 26–27.

Defendant's first argument is not well-taken. Rather than immediately terminating the partnership and any fiduciary duties owed between partners, the dissolution process allows a partnership to continue "for the purpose of winding up its business." Ohio Rev. Code §

1776.62(A). And a partner participating in the winding up of partnership business continues to owe fiduciary duties to the partnership and their partners. *See Peterson v. Teodosio*, 297 N.E.2d 113, 121 (Ohio 1973) (explaining a surviving partner breached his fiduciary duties to a partnership "by falsely representing and claiming [partnership] assets as his own" during the partnership's winding up). Thus, contingent on there being a valid partnership between Plaintiff and Defendant, the two continued to owe each other fiduciary duties during the winding up of the 19Honeysuckle business, including resolving their disputes over control of the relevant content accounts, revenue streams, and banking accounts.

Nor is the Court persuaded there is insufficient evidence for a reasonable fact finder to determine Defendant breached her fiduciary duties. As Plaintiff identifies, he testified Defendant appropriated the 19Honeysuckle Chaturbate account and its audience for her sole benefit following the end of their relationship, despite such audience resulting from their joint efforts. *See* Doc. 21-1, at 142–45; Doc. 25, at 16–17. Defendant largely admits as much, as she described changing the name of the Chaturbate account, continuing to post content for its audience, and not distributing any resulting profits to Plaintiff. *See* Doc. 21-2, at 186–88. A reasonable fact finder could conclude this act constitutes falsely claiming partnership assets, specifically the 19Honeysuckle account and its audience, as her own and retaining all profits derived therefrom. *See Peterson*, 297 N.E.2d at 121; *Tinter v. Lucik*, 876 N.E.2d 1026, 1031 (Ohio Ct. App. 2007) (explaining, in a related context, one who owes a fiduciary duty to another may not "misuse her power by promoting her personal interests at the expense of" the other). Further, as discussed below, evidence of Defendant's continued use of copyrighted works of which Plaintiff is a co-owner are broadly sufficient to support a breach of fiduciary duty claim. *See, e.g.*, Doc. 21-1, at 102–105 (claiming Defendant collected ad revenue on works uploaded to an adult content website without Plaintiff's permission

after the termination of their relationship). Defendant does not directly contest this evidence, instead choosing to summarily state that "assuming there was a partnership . . . [Plaintiff] has not sufficiently identified anything that [Defendant] did that breached any of those duties." (Doc. 23-1, at 26); *see* Doc. 26, at 5 ("There was no partnership, and therefore, no duties to breach.").

Third, even if the Court were to agree with Defendant's description of Plaintiff's "unclean hands," this doctrine does not justify judgment as to the *claim* for a breach of fiduciary duty. The doctrine of unclean hands operates as an affirmative defense to the imposition of equitable remedies once the Court's equity jurisdiction has been properly invoked. *See Bridgestone Am. Tire Operations, LLC v. Harris*, 150 N.E.3d 1270, 1280 (Ohio Ct. App. 2020) (explaining the unclean hands doctrine does not apply "where a plaintiff brought suit for monetary damages" and "the court's equitable jurisdiction was not invoked"). But (at least under Ohio law), breach of a partner's fiduciary duty is, at its core, a legal claim. *See Strock*, 527 N.E.2d at 1243 ("A claim of breach of fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care. . . . Indeed, a fundamental principle of the law of *all* torts is that a legal right must exist and that this right must be violated in order to warrant redress."); *cf.* Ohio Rev. Code § 1776.45 (creating a cause of action to pursue "legal or equitable relief" to enforce another partner's fiduciary duties under § 1776.44); *but see Chauffeurs*, *Local 391 v. Terry*, 494 U.S. 558, 567 (1990) ("[A]n action by a trust beneficiary against a trustee for breach of fiduciary duty . . . [was] within the exclusive jurisdiction of courts of equity."). True, the Court may properly impose certain equitable *remedies* if an actor is found to have violated their fiduciary duties, just as it may, for example, order specific performance as a remedy following a successful legal claim for breach of contract. And "[t]he 'clean hands doctrine' of equity requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some *remedy* but has violated good faith

by his prior-related conduct, the court will deny the *remedy*." *Marinaro v. Major Indoor Soccer League*, 610 N.E.2d 450, 452 (Ohio Ct. App. 1991) (emphasis added). The unclean hands doctrine is not itself, however, a sufficient reason to deny relief on the underlying claim on which an equitable remedy may ultimately rely. *See Beck v. Bartolac*, 1995 WL 641276, at *2 (Ohio Ct. App) (reversing an award of specific performance due to the appellees' bad faith conduct but nevertheless remanding "to determine whether appellees have established a claim for legal relief under the contract"). Accordingly, even if the Court were convinced by Defendant's invocation of the unclean hands doctrine, summary judgment on Plaintiff's breach of fiduciary duty claim would not be warranted on such grounds. The doctrine is only relevant to Plaintiff's ultimate entitlement to an equitable remedy in this matter.

Defendant appears to recognize as much, as her fourth argument centers on Plaintiff's purported inability to demonstrate damages—the archetypical legal remedy—flowing from any breach of fiduciary duty. Again, the Court is not persuaded. As Plaintiff identifies, he need not present evidence convincingly establishing the particular sum of damages he suffered in order to survive summary judgment. Rather, Plaintiff "was required to present evidence of the existence of damages—not the specific method of calculation or amount of damages." *Pollard v. Elber*, 123 N.E.3d 359, 371 (Ohio Ct. App. 2018) (quoting *Wallace v. Kalniz, Choksey Dental-Ralston, Inc.*, 2013 WL 3455663, at *11 (Ohio Ct. App. 2013)). And Plaintiff does just that. For example, Plaintiff points to Defendant's own testimony establishing she took sole control over the 19Honeysuckle account and its 640,000 followers, despite the fact that Plaintiff and Defendant generated such follower base in part through creating and uploading of joint content. *See* Doc. 21-2 at 92–99, 181–88; Doc. 21-1, at 126–29. Beyond depriving Plaintiff of his portion of the value associated with the 19Honeysuckle audience, Defendant's testimony indicates she continued to

profit off the 19Honeysuckle audience after the couple's breakup without remitting any profits to Plaintiff. *See* Doc. 21-2, at 187–89. Plaintiff testified the same is true with respect to the 19Honeysuckle Twitter account, which built an audience in part by promoting joint content created by the couple. *See* Doc. 21-1, at 186–88. In all, Plaintiff points to evidence sufficient for a reasonable fact finder to determine he suffered harm as a result of Defendant's purported breach of fiduciary duties. This fact precludes summary judgment in Defendant's favor, as Defendant's arguments regarding the allegedly "speculative and unsupported" nature of Plaintiff's damages testimony is one more properly reserved for trial. *See Meyer v. Lucas*, 249 N.E.3d 851, 861 (Ohio Ct. App. 2024).

*Equitable Relief & "Accounting"*

Plaintiff offers differing accounts of what form of "accounting" he seeks. Originally, Plaintiff's requests for an accounting took two distinct forms: (1) a general "accounting" request appearing to target *information* about the partnership and partnership property within Defendant's possession, *see* Doc. 1, at 11–12 (requesting an "accounting" as to the property and Airbnb, including "insurance payments, taxes, and necessary repairs and improvements, and all income"); and (2) a request for the equitable remedy of "accounting of profits" related to the couple's co-owned copyrighted works, *see id.* at 13–14; *see also Moore Fam. Tr.*, 225 N.E.3d at 559 (describing "an accounting of unpaid rents and profits" as an "equitable remedy" rooted in a fiduciary relationship). Further, in opposition, Plaintiff specifically asserts accounting is a separate cause of action in partnership disputes, *see* Doc. 25, at 18–19.

Defendant argues, correctly, that there is no freestanding, common-law right of action under Ohio law for an "accounting." *See* Doc. 23-1, at 12–13, 17–18 (citing *Francisco D. Mateo MD, Inc. v. Proia*, 227 N.E.3d 389, 403 (Ohio Ct. App. 2023)); *Moore*, 225 N.E.3d at 559 ("[A]

demand for an accounting does not form the basis for a standalone action but is instead, a remedy."). To the extent Plaintiff seeks to pursue a distinct claim of accounting under Counts II, V & VII, Defendant's Motion will be granted. While there appears to be some ability for partners to bring a statutory claim for the production of partnership information, *see* Ohio Rev. Code § 1776.43(C)(1) (requiring each partner to furnish to the other "any information concerning the partnership's business and affairs"); Ohio Rev. Code § 1776.45(B)(2)(a) (permitting a partner to "maintain an action against the partnership or another partner for legal or equitable relief . . . to enforce . . . [t]he partner's rights under [§] . . . 1776.43"), Plaintiff brought no such claim. *See* Doc. 1, at 14. Even if he had, Plaintiff does not identify what partnership information such an action could reveal which would not already be subject to discovery related to Plaintiff's other substantive claims, including his breach of fiduciary duty claim. *See Digital 2000, Inc. v. Bear Commc'ns, Inc.*, 130 F. App'x 12, 23 (6th Cir. 2005) ("In light of the broad discovery available to litigants, accounting actions are of dubious utility.").

This does not mean, however, that Plaintiff is foreclosed from pursuing the equitable *remedy* of an accounting—often interchangeably referred to as an "accounting for profits" or, more recently, "disgorgement"—after prevailing on his breach of fiduciary duty claim. *See* Restatement (Third) of Restitution and Unjust Enrichment § 51, cmt a. (A.L.I. 2011). This equitable remedy is defined generally as the return of the "net increase in the assets of the wrongdoer, to the extent that this increase is attributable to the underlying wrong." *Id.* at cmt. e. And a partner's breach of a fiduciary duty is a qualifying "wrong" potentially subjecting the profits derived therefrom to an accounting. *See Plainsboro Partners III L.P. v. Bellows & Assocs.*, 2026 WL 2108768, at *6 (Ohio Ct. App.) ("Ohio courts have held that an accounting may be an appropriate remedy for a breach of fiduciary duty"). And in deciding whether to impose an accounting, courts may in certain

circumstances shift the burden to the defendant to provide information regarding the partnership's operation and the profits potentially owed to the plaintiff. *See, e.g.*, *Trent P. Fisher Enters. v. SAS Automation, LLC*, 2023 WL 8358982, at *6 (S.D. Ohio). Because questions of fact preclude summary judgment on Plaintiff's breach of fiduciary duty claim, granting any aspect of Defendant's Motion seeking summary judgment on the ultimate availability equitable remedies related to the alleged breach of fiduciary duties—including an accounting—would be premature.[8]

The same is true with respect to Plaintiff's request for an accounting for profits stemming from Defendant's purported continued use of copyrighted works in which Plaintiff retains an interest. *See* Doc. 1, at 13–14. Initially, the Court agrees with Defendant that she is entitled to summary judgment on Plaintiff's copyright infringement claim. *See* Doc. 1, at 12–13; Doc. 23-1, at 18. As part of this claim, Plaintiff alleged only that he was a "co-owner" of certain copyrighted works created by him and Defendant. *See* Doc. 1, at 12–13. However, as identified by Defendant, if Defendant was also a co-owner of the works, then "no claim of infringement could lie against [her]." *Severe Records, LLC v. Rich*, 658 F.3d 571, 582 (6th Cir. 2011). Plaintiff attempts to avoid this conclusion by claiming his role in "performing all filming and editing work" for some of the couple's 19Honeysuckle content pieces establishes his sole ownership thereof. *See* Doc. 25, at 19 (citing Doc. 21-1, at 59). But there is no genuine dispute over the fact that Plaintiff appeared in, performed in, and ultimately played an indispensable role in each of the 19Honeysuckle videos Plaintiff now claims to be the sole owner of. Accordingly, there is no genuine dispute of material fact regarding Defendant's status as a co-owner of the relevant content, and no suit for copyright

---

8. The Court also declines to exercise its equitable discretion to conclusively determine Plaintiff comes to the Court with unclean hands based solely on the Parties' deposition testimony provided in "cold print." *Broadcast Music v. Havana Madrid Restaurant Corp.*, 175 F.2d 77, 80 (2nd Cir. 1949) ("The best and most accurate record is like a dehydrated peach; it has neither the substance nor the flavor of the fruit before it was dried.").

infringement will lie against her. *See Morill v. Smashing Pumpkins*, 157 F. Supp. 2d 1120, 1124 (C.D. Cal. 2001) (explaining a band and creative director of its music video were co-owners of its copyright where each "had creative control over separate and indispensable elements of the completed product" and where the band had "sole control" over its performance during the video). Perhaps more straightforwardly, Plaintiff is also precluded from maintaining a suit for copyright infringement until he registers the copyright. *See* 17 U.S.C. § 411(a); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019).

Even without an infringement claim, other remedies may be available to Plaintiff. For example, while co-owners of a copyrighted work may not sue each other for infringement, they are generally able to pursue an equitable remedy "for a 'division of the profits.'" *Everly v. Everly*, 958 F.3d 442, 467 (6th Cir. 2020) (Murphy, J., concurring) (quoting *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (seeking an "accounting")). Such a request for the equitable remedy of accounting would spring not from the Copyright Act, but from state law. *Id.* ("[A] contractual or equitable cause of action between copyright co-owners is a state created claim owing its existence to state law." (citation modified)). Specifically, the claim that Defendant misappropriated works co-owned by Plaintiff and Defendant during the alleged partnership fits exactly within the scope of Plaintiff's breach of fiduciary duty claim, and both claims rely on similar evidence. *See, e.g.*, Doc. 25, at 20 (citing Doc. 21-2, at 165–170); *id.* at 17 (arguing, with respect to Plaintiff's breach of fiduciary duty claim, that Defendant's "continued revenue generation from jointly created assets, is itself evidence of compensable harm"). Thus, while Plaintiff may not maintain a separate claim for copyright infringement, evidence of Defendant's continued use of jointly authored works created during the course of the purported 19Honeysuckle partnership bears on whether she breached any fiduciary duty owed to Plaintiff and, accordingly,

whether the imposition of an equitable remedy is appropriate. *See Peterson*, 297 N.E.2d at 173–74; *Everly*, 958 F.3d at 467 (Murphy, J., concurring). As explained above, however, factual disputes preclude summary judgment on Plaintiff's breach of fiduciary claim, and judgment on the availability of equitable remedies, including Plaintiff's request for a permanent injunction related to the copyrighted works and alleged partnership accounts, is similarly inappropriate. *See, e.g.*, *Ohio A. Phillip Randolph Inst. v. Husted*, 350 F. Supp. 3d 662, 670 (S.D. Ohio 2018) ("[W]hen a plaintiff seeks a permanent injunction, the plaintiff must show actual success on the merits, rather than a mere likelihood of success on the merits.").[9]

In sum, the Court denies Defendant's Motion with respect to Plaintiff's breach of fiduciary duty claim and his requests for the equitable remedies of accounting for profits and a permanent injunction. The Court grants Defendant's Motion with respect to Plaintiff's copyright infringement claim and Plaintiff's independent claims for an accounting.

<u>Partition</u>

Plaintiff's next claim seeks partition of the condo purchased by the then-couple in 2022. *See* Doc. 1, at 10; *see also* Docs. 1-1, 1-2 (providing copies of the purchase money mortgage and deed to the condo, respectively). Plaintiff invoked both Ohio Rev. Code § 5307.01 *et seq.* and this Court's equitable authority in support of partition. *See* Doc. 1, at 10. Chapter 5307 of the Ohio Revised Code governs the procedures applicable to partition actions, including the filing of the petition, *see* § 5307.03, the manner of sale, *see* § 5307.12, and the distribution of sale proceeds,

---

9. Like Plaintiff's separate *claims* for an accounting, however, the Court will grant summary judgment to the extent Plaintiff seeks to pursue an injunction as a separate cause of action as opposed to a mere remedy. *See Cap. Equity Grp. v. Ripken Sports, Inc.*, 744 F. App'x 260, 264–265 (6th Cir. 2018).

*see* § 5307.14(A) ("[T]he money or securities arising from a sale . . .shall be distributed and paid, by order of the court of common pleas, to the parties entitled to the money or securities.").

Initially, Defendant argued this Court should grant summary judgment on this claim on mootness grounds. *See* Doc. 23-1, at 11–12. The condo was sold while this case was pending, and the proceeds are now held in escrow pending resolution of this dispute. *See* Doc. 21-1, at 139–40. Further, the Parties do not dispute Plaintiff's status as a co-owner of the condo prior to its sale or his entitlement to sale proceeds. *See* Doc. 21-2, at 138–39. Accordingly, Defendant maintained "none of the steps" provided under Chapter 5307 "can proceed at this juncture." (Doc. 23-1, at 12). Plaintiff opposed, arguing that, while the sale of the condo obviates the need for an order requiring physical partition or partition by sale, a live dispute remains over "how the escrowed proceeds should be allocated between two record owners." (Doc. 25, at 18).

As evidenced by Ohio Rev. Code § 5307.14 and related provisions, Ohio's partition statutes govern the procedures applicable to a partition action in state courts, not those applicable to a federal district court exercising its equitable authority over a diversity action. *See. Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 532 (6th Cir. 2008) ("[T]he *Erie* dichotomy . . . requires a federal court sitting in diversity to apply state substantive law and federal procedural law." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938))). Thus, the inapplicability of Ohio's statutory procedural regime for partition actions does not *per se* limit this Court's substantive equitable authority to order a particular division of sale proceeds to effectuate a partition of the condo. Indeed, Ohio courts have consistently maintained an equitable partition award may extend beyond any formal statutory right to partition. *See Black v. Sylvania Producing Co.*, 137 N.E. 904, 905 (Ohio 1922) ("If the petition was insufficient for a statutory partition, it clearly is sufficient for an equitable partition. Where there is a wrong pleaded, equity should be

far-reaching enough and sufficiently adaptable to furnish a remedy for that wrong."); *Halley v. Jones*, 1928 WL 2669, at *1 (Ohio Ct. App.) ("While statutory methods of partition are created by statute the remedy itself is an equitable one."); *McGill v. Roush*, 621 N.E.2d 865, 874 (Ohio Ct. App. 1993) ("The right of partition, either under statute or in equity, is remedial and should be liberally construed.").

Even though this Court retains the equitable authority to divide the proceeds from the condo's sale, the Court finds there is no live dispute remaining between the Parties on this point. In reply, Defendant concedes the Parties were "joint tenants with undivided one-half interests in the condo" entitling Plaintiff to half the sale proceeds. (Doc. 26, at 6). Accordingly, she requested this Court "order the proceeds in escrow be split between [Defendant] and [Plaintiff] equally." *Id.* Plaintiff agrees, as he stated during his deposition he believes he is "entitled to half" of the sale proceeds sitting in escrow. (Doc. 21-1, at 36). The Parties are thus in agreement regarding their respective entitlement to the proceeds from the sale, and there exists no live controversy between them regarding their respective legal interest in the condo, their entitlement to the sale proceeds, or the final disposition of Plaintiff's partition claim. There is thus no "genuine dispute[] between adverse parties, where the relief requested would have a real impact on the legal interests of those parties." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 558 (6th Cir. 2021) (quoting *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006)). Without a live controversy, this Court lacks jurisdiction over Plaintiff's partition claim and will dismiss such claim without prejudice.

<u>Airbnb Claims</u>

Next are Plaintiff's breach of contract and unjust enrichment claims with respect to the Airbnb. *See* Doc. 1, at 12. Beginning with the breach of contract claim, Defendant lodges two

primary arguments in support of its motion for summary judgment. First, Defendant argues there is insufficient evidence of a meeting of the minds between the parties to operate the Airbnb under definite, binding terms. *See* Doc. 23-1, at 14. Second, Defendant asserts Plaintiff has identified no damages suffered as a result of any purported breach, as the Airbnb was not rented to any third party following the couple's split in 2024. *Id.* at 14–15. Because the Court agrees with Defendant's second argument, she is entitled to summary judgment as to Plaintiff's breach of contract claim.

"To establish a breach-of-contract claim, a party is required to demonstrate that (1) a contract existed; (2) they fulfilled their obligations under the contract; (3) the other party breached their obligations under the contract; and (4) damages resulted from this breach." *Wells v. Right Choice Contracting, LLC*, 280 N.E.3d 1, 9 (Ohio Ct. App. 2026). And failing to put forth evidence sufficient to establish any of these essential elements will be fatal to Plaintiff's claim. *Id.*

Defendant offered undisputed deposition testimony establishing the Airbnb ceased operating prior to the couple's breakup in January 2024. *See* Doc. 21-2, at 189–90. Further, Plaintiff's counsel, while deposing Defendant, indicated they had received "2022 and 2023 records" from Defendant related to the operation of the Airbnb. *Id.* at 189. Despite this record production, Plaintiff points to no evidence he was damaged by any alleged breach of the Airbnb agreement through a deprivation of rental revenue or under any other theory of damages. Plaintiff's deposition states he and Defendant invested "jointly created funds" to transform the apartment into an Airbnb and "jointly operated" it. *See* Doc. 21-1, at 55–56, 63. Plaintiff further avers he invested labor into the Airbnb, including cleaning, making repairs, and purchasing supplies for guests. *See* Doc. 21-1, at 100 (Plaintiff's interrogatory response No. 12).[10] Even viewing this evidence in a light most favorable to Plaintiff, the deposition testimony before the Court solely indicates the

---

10. This pincite utilizes ECF's internal pagination.

entirety of the couple's revenue and expenditures was routed through the bank account in Defendant's name, which Plaintiff claims to have had full access to until the couple's relationship ended in 2024—well after the Airbnb ceased operating as such. *See* Doc. 21-1, at 23–25; Doc. 21-2, at 189–90. Plaintiff does not identify how he lacked access to the Airbnb's revenue or was otherwise deprived of the profits generated therefrom. There is thus no evidence from which a fact finder could conclude "Defendant never paid Plaintiff his share of the income" generated by the Airbnb as alleged in Plaintiff's Complaint, *see* Doc. 1, at 11, and Defendant is thus entitled to summary judgment on the breach of contract claim.

Plaintiff's unjust enrichment claim largely mirrors his contract claim, as he alleged "Defendant has failed to pay Plaintiff his equal share of the income generated through the parties' joint operation of the Airbnb . . . [and] retain[ed] all of Plaintiff's equitable share in the income generated through the parties' joint operation of the Airbnb." (Doc. 1, at 12). In opposition to Defendant's Motion, Plaintiff offers additional theories regarding how his investments in the Airbnb unjustly enriched Defendant. Specifically, Plaintiff claims Defendant "retained the continued economic benefit of [the Airbnb] property (whether through rent payments, expense offsets, or personal occupancy value) without compensating [Plaintiff]." (Doc. 25, at 26).

But this new theory of unjust enrichment through personal occupancy is entirely unsupported by facts alleged in the Complaint, as Plaintiff's Complaint focuses solely on the revenue derived from the Airbnb as such. *Compare* Doc. 1, at 12 (referencing only Airbnb revenue), *with* Doc. 25, at 26–27 (citing testimony indicating Defendant and her new romantic partner resided in the apartment beginning in January 2024 after the apartment ceased operating as an Airbnb). Allowing Plaintiff to proceed on this new legal theory, which itself relies on new facts entirely absent from Plaintiff's Complaint, would, in effect, allow Plaintiff to amend his

Complaint in opposition to summary judgment. This is not permissible. *See Tucker v. Union of Needletrades*, *Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) (explaining the complaint must "give the defendant fair notice of what the Plaintiff's claim is and the grounds upon with it rests" (citation modified))).

Unable to rely on a new theory of liability, Plaintiff's unjust enrichment claim fails for largely the same reason as his breach of contract claim. Specifically, he fails to identify any evidence suggesting Defendant was unlawfully or unjustly enriched by retaining Airbnb revenue and profits rightfully owed to him. The evidence before the Court instead indicates Plaintiff had full access to the couple's shared banking accounts during the entire time the Airbnb generated rental revenue. Accordingly, the Court grants Defendant's Motion with respect to Plaintiff's breach of contract and unjust enrichment claims related to operation of the Airbnb.

Unjust Enrichment & Conversion

The final claims at issue are Plaintiff's claims for unjust enrichment and conversion related to vehicles purchased during the Parties' relationship and $12,000 purportedly placed by one of Plaintiff's paying customers into a Cashapp account controlled by Defendant. *See* Doc. 1, at 16–18. Defendant offers multiple arguments in support of its Motion with respect to both categories of claims, and the Court analyzes each in turn.

*Conversion*

The tort of conversion requires Plaintiff to demonstrate the following elements: (1) he "had ownership or right of possession of the property at the time of conversion; (2) [Defendant's] conversion by a wrongful act or disposition of his property or property rights; and (3) damages result[ing] therefrom." *RAE Assocs. v. Nexus Commc'ns*, *Inc.*, 36 N.E.3d 757, 765 (Ohio Ct. App. 2015). Where the defendant is entitled to lawfully possess property the plaintiff claims was

converted, a demand and refusal are necessary to demonstrate conversion. *See Kelly v. Kelly*, 837 N.E.2d 811, 814 (Ohio Ct. App. 2005).

With respect to the Cashapp funds, Defendant argues Plaintiff's conversion claim fails because he has failed to identify a specific "corpus" of funds sitting within the Cashapp account. *See* Doc. 23-1, at 29; Doc. 26, at 9–10 (citing *RAE Assocs.*, 36 N.E.3d at 765–66). Specifically, Defendant points to her own unrebutted testimony establishing she did not keep funds in the Cashapp funds after receipt. *See* Doc. 21-2, at 132 ("[A]nytime I would get any type of money, I'd immediately pull it out."). Further, Plaintiff himself stated he did not know whether any funds remained in the Cashapp account at the end of the Parties' relationship, let alone the specific account balance. *See* Doc. 21-1, at 138–39. The Court agrees this is insufficient. "[A] claim for conversion of money requires that the money has been 'earmarked' or is specific money capable of identification, such as money in a bag. . . . An obligation to merely make good a certain *sum* of money cannot form the basis of a conversion claim." *Scotts Co. v. Acronym Media, Inc.*, 2025 WL 3763896, at *5 (S.D. Ohio) (citation modified). Here, Plaintiff cannot identify a particular "earmarked" set of funds remaining in Defendant's possession to which his claim of conversion may attach. In fact, Plaintiff's deposition testimony never references the $12,000 identified in his Complaint, as he instead stated in general terms that the Cashapp was "a joint account that joint funds were deposited into from both of us." (Doc. 21-1, at 138). At most, the evidence may support a claim of entitlement to a particular *sum* of money deposited into the Cashapp account rather than a particular set of "earmarked" funds therein. "This distinction is fatal" to Plaintiff's conversion claim with respect to the Cashapp funds. *Scotts Co.*, 2025 WL 3763896, at *5.

Turning to the vehicles, Plaintiff claims Defendant converted a 2021 Subaru Crosstrek, a 2023 Seadoo Spark Jetski, a shoreline trailer, and a kayak, with an aggregate purchase value of

roughly $41,200. *See* Doc. 1, at 9. Plaintiff stated during his deposition these vehicles, among others, were purchased "with mutually generated funds" stemming from the 19Honeysuckle partnership. *See* Doc. 21-1, at 140–41. Crucially, he did not claim sole ownership of these vehicles, instead stating he is entitled "to half the equity" in each. *See id.* at 140–41, 55 ("All vehicles were purchased with jointly created funds."). Thus, the evidence before the Court, even viewed in a light most favorable to Plaintiff, at most establishes the Parties were co-owners of the disputed vehicles. And because the Defendant was a co-owner of these vehicles and shared the right to possess them, "the original taking was rightful and no act of dominion or control inconsistent with [Plaintiff's] ownership [has] taken place." *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.*, 493 N.E.2d 289, 292 (Ohio Ct. App. 1985). Where Defendant's initial possession and dominion over the vehicles were rightful, "a demand and refusal are necessary" to maintain an action for conversion. *Id.*

In seeking to avoid this requirement, Plaintiff contends enforcing it in the present circumstances would be futile, as Defendant obtained a civil protective order prohibiting Plaintiff from contacting her.[11] *See* Doc. 25, at 21–22 (citing Doc. 25-1, at 84–86). However, the civil protective order Plaintiff invokes expressly contemplated future contact and negotiations between the parties, including through their respective attorneys, to resolve disputes regarding disposition of jointly purchased property. *See* Doc. 25-1, at 85 ("The parties acknowledge that they are working toward resolving any and/or all asset and/or debt matters through counsel, and will fully cooperate therewith. The parties acknowledge that this may require the parties . . . to negotiate

---

11. Plaintiff further contends no demand was needed because Defendant "asserted exclusive control over . . . business accounts, financial platforms, and property following the breakup" inconsistent with his ownership rights. (Doc. 25, at 22). However, Plaintiff cites no evidence connecting this argument to the disputed vehicles and does not explain how Defendant exercised her ownership rights over the vehicles to the exclusion of Plaintiff's.

and/or formalize a resolution, and/or to further litigation, if necessary."). As a matter of law, then, the Court finds Plaintiff had the ability to negotiate with Defendant regarding the disposition of the vehicles and, accordingly, make a demand for their return or for a realization of his one-half interest in their value. By its plain terms, the protective order does not sweep far enough to excuse his affirmative obligation to make a demand on the vehicles before bringing his claim for conversion. For this reason, Defendant's Motion is granted with respect to Plaintiff's conversion claims for the Cashapp funds and vehicles.

*Unjust Enrichment*

Turning to Plaintiff's unjust enrichment claims with respect to the Cashapp funds and vehicles, *see* Doc. 1, at 18–19, the Court finds questions of fact preclude summary judgment. Unlike his conversion claims, Plaintiff was not required to either identify a specific "corpus" of funds in Defendant's possession or to make a formal demand on the vehicles. All Plaintiff must do is put forth affirmative evidence sufficient for a reasonable fact finder to determine he conferred a benefit on Defendant, Defendant knew of the benefit, and Defendant's retention of the benefit would be unjust. *See Padula v. Wagner*, 37 N.E.3d 799, 813 (Ohio Ct. App. 2015). Plaintiff succeeded. As recounted above, and viewed in a light most favorable to him, Plaintiff offered deposition testimony indicating the Cashapp account served as a joint repository for revenue earned through the Parties' efforts on behalf of the alleged 19Honeysuckle partnership, and that Defendant did not return funds within this account owed to him. *See* Doc. 21-1, at 138–39 (asserting Plaintiff is entitled to "half" of the disputed Cashapp funds). He similarly asserted the disputed vehicles were purchased with joint partnership funds. *See id*. at 140–41. Defendant, for her part, contests Plaintiff's entitlement to half the equity of certain vehicles which remain in her possession. For example, Defendant stated Plaintiff has no valid ownership interest in either the

Jetski or Subaru Crosstrek. *See* Doc. 21-2, at 144–45. A reasonable fact finder could determine Defendant would be unjustly enriched by the continued possession and enjoyment of vehicles purchased through joint funds derived from the alleged partnership without remitting any benefit to Plaintiff. The same is true with respect to the disputed Cashapp funds. To the extent Defendant maintains Plaintiff retains control of certain joint funds or personal property purchased with joint funds which "equate" in value to that which she possesses, *see id.* at 142, such a dispute presents a question of fact regarding whether either party "retained an unreasonable amount of property acquired through their joint efforts." *Anderson v. Baker*, 2008 WL 5423261, at *7 (Ohio Ct. App.).

Defendant's counterarguments are unavailing. With respect to the vehicles, Defendant claims her retention of property "she purchased for herself during the parties' relationship" cannot be unjust in light of Plaintiff benefitting from Defendant "paying all expenses in the relationship" including rent and mortgage expenses. (Doc. 23-1, at 31). But this argument begs the question, as it presumes Defendant used solely her funds to cover the couple's living expenses and purchase the disputed vehicles. However, as explained above, questions of fact remain regarding whether a partnership existed and whether Defendant unjustly retained partnership funds. With respect to the Cashapp funds, Defendant argues Plaintiff cannot recover under a theory of unjust enrichment where a paying customer, not Plaintiff himself, deposited the disputed funds into the account. *See id.* (citing *Thompson v. Custer*, 124 N.E.3d 257, 266 (Ohio Ct. App. 2018)). But the ultimate question is not whether a third party deposited the "benefit"—here, the funds—into the Cashapp account. Rather, what matters under the doctrine of unjust enrichment is whether Plaintiff "has a 'superior equity' such that it would be 'unconscionable for [Defendant] to retain the benefit.'" *Slush Puppie Ltd. v. ICEE Co.*, 792 F. Supp. 3d 834, 854 (S.D. Ohio 2025) (quoting *Barnett v. Kroger Co.*, 2025 WL 712741, at *12 (S.D. Ohio)). The *Thompson* court itself recognized as much.

*See Thompson*, 124 N.E.3d at 266 ("Unjust enrichment occurs when one individual receives a benefit which, in justice and equity, belongs to another.").

Thus, the Court denies Defendant's Motion with respect Plaintiff's unjust enrichment claims pertaining to the Cashapp funds and the disputed vehicles.

In sum, the Court grants Defendant's Motion for Summary Judgment with respect to Plaintiff's breach of contract and unjust enrichment claims as to the Airbnb, his copyright infringement claim, his conversion claim, and, finally, his "claims" for an accounting, injunction, and accounting for profits, to the extent Plaintiff asserted such independent claims requiring summary judgment thereon. Defendant's Motion is denied with respect to Plaintiff's breach of fiduciary duty claim and his unjust enrichment claim pertaining to the Cashapp funds and vehicles. In connection with these two remaining claims, Plaintiff is free to pursue equitable remedies, including an accounting and an injunction. Finally, Plaintiff's claim for partition of the condo is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Partial Summary Judgment (Doc. 23) be, and the same hereby is, GRANTED IN PART and DENIED IN PART as set forth herein.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: September 21, 2026